FILED
02 DEC -4 AM 10: 37
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC - 4 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALFREDO AMECA-RODRIGUEZ and JULES LEYVA, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CV 01-JEO-3145-S |
| COMPTRAC, SAMUEL B. ROBERTS, M.D., SOUTHERN MEDICAL GROUP, SHELLY RHODES, M.D., JAMES O. POWELL, and OPHTHALMOLOGY ASSOCIATES, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the motion of defendants Shelly Rhodes Weisenfeld M.D. (hereinafter "Weisenfeld") and Southern Medical Group (hereinafter "SMG") to dismiss certain counts of the plaintiffs' amended complaint. (Doc. 53). A hearing on the motion was conducted on November 27, 2002. Premised on the briefs, the arguments of counsel, and the record, the court finds that the motion is due to be granted in part and denied in part.

The plaintiffs allege in their amended complaint that defendants Weisenfeld and SMG, along with others, committed medical malpractice and were negligent in their treatment of Alfredo Ameca-Rodriguez (hereinafter "Ameca") following infliction of a work injury to his eye. (Doc. 47). The complaint also alleges that certain defendants, including Weisenfeld and SMG, breached the implied warranty that the medical equipment used by them was fit for its intended purpose. (*Id.*). They further allege that certain defendants, not including Weisenfeld and SMG, fraudulently suppressed facts related to Ameca's care for economic gain. (*Id.*). Lastly, they allege that all the defendants are liable to the plaintiffs for loss of consortium. (*Id.*). Weisenfeld

and SMG seek an order of this court dismissing counts three and four, which are the warranty and fraudulent suppression claims.[1]

## STANDARD OF REVIEW

On a motion to dismiss, the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

## DISCUSSION

Defendants Weisenfeld and SMG argue that because "the plaintiffs' allegations clearly involve medical treatment provided to Mr. Rodriguez by Weisenfeld and the other defendants in February 2000," the "case is subject to and governed by the Alabama Medical Liability Act (hereinafter "AMLA").[2] (Doc. 53 at 3). In support of these assertions, they cite to *Allred v. Shirley*, 598 So. 2d 1347 (Ala. 1992) and *Ex parte Sonnier*, 707 So. 2d 635 (Ala. 1997).[3] They conclude that the AMLA "subsumes" the plaintiffs' warranty and fraudulent suppression claims.

In their response, the plaintiffs assert that the defendants have not met their burden on the

---

[1] Due to the nature of the allegations, Weisenfeld and SMG have moved to dismiss the fraudulent suppression claim (Count Four) because they were unsure whether or not the plaintiffs were including them in that count. An examination of the amended complaint and the plaintiffs' counsel's representations at the hearing show that these defendants are not included in the fraudulent suppression count.

[2] The AMLA is found at ALABAMA CODE §§ 6-5-480, *et seq.* and 6-5-540, *et seq.*

[3] They also inform the court of *Collins v. Ashurst*, 821 So. 2d 173 (Ala. 2001), a case similar to and related to the instant issues.

2

motion. (Doc. 56 at ¶ 2). They cite to *Skelton v. Druid City Hospital Board*, 459 So. 2d 818 (Ala. 1984) and *Horn v. Citizens Hospital*, 425 So. 2d 1065 (Ala. 1981).

The warranty claim (Count Three) alleges that Ameca, through his employer, paid for the use of the medical equipment used in his treatment and that he was dependent on the defendants "to choose fit products and equipment for his medical diagnosis and care." (Doc. 47 at ¶¶ 38 & 39). He further alleges that they were "incompetent to interpret diagnostic equipment results or the equipment used by Dr. Roberts and Dr. Rhodes failed to show that a piece of metal was embedded in [his] eye." (*Id*. at ¶ 41). Thus, he claims, the doctors and their employers are responsible on the breach of an implied warranty claim. (*Id*. at ¶ 42).

The plaintiffs assert in the fraudulent suppression claim that defendants Samuel B. Roberts, M.D., and Comptrac suppressed facts material to Ameca's severe medical condition. (Doc. 47 at ¶ 43.a.). They further state that these defendants were "turning back to work as many workers as possible, regardless of their medical condition" to "gain the favor of their employers and insurance carriers." (*Id*. at ¶ 43.b.).

In *Horn*, the plaintiff brought suit against her doctor for medical malpractice where she began experiencing abdominal pains approximately one year after an appendectomy, but did not determine the cause of the pain until approximately seven years later when it was discovered that a needle remnant was left at the site of the surgery. "The dispositive issue here [was] whether fraudulent concealment tolls the operation of the Medical Liability Act [("MLA")] thereby permitting an action otherwise permitted by the statute to be brought more than four years after the alleged act of malpractice." *Horn*, 425 So. 2d at 1066. There was no dispute in the case that the situation was governed by the MLA. *Id*. at 1067. Affirming the dismissal of the action, the

Alabama Supreme Court concluded "that had the legislature intended fraudulent concealment or the act of leaving foreign objects in a patient's body to lengthen the period of commencing medical malpractice actions, the legislature could have included a specific provision in the Medical Liability Act to accomplish that purpose." *Id.* at 1072.

In *Skelton*, the plaintiffs brought suit against a surgeon, the hospital, and various manufacturers of a suturing needle after the product broke during surgery. The plaintiffs alleged negligence, loss of consortium, and implied warranty claims. The trial court granted the hospital's motion for summary judgment on the warranty claim because the hospital was not a "merchant" or a "seller" and there was no "sale" involved, as those terms are defined under Title 7 of the Alabama Code.[4] *Skelton*, 459 So. 2d at 820. The Alabama Supreme Court reversed the lower court, finding that the hospital met the definitions under the Uniform Commercial Code. In *dicta*, the court further stated:

> Assuming, arguendo, that this court determined that Druid City is not a "merchant," it would still be liable under U.C.C. § 2-315 because of the nature of the patient's reliance on the skill and judgment of the hospital in the selection of medical supplies used for the care of the patient. Comment 4 to § 7-2-315 states:
>
>> "Although normally the warranty will arise only where the seller is a merchant with the appropriate 'skill or judgment,' it can arise as to nonmerchants where this is justified by the particular circumstances."
>
> The gist of an action under this section is reliance. Patients are rarely in a position to judge the quality of the medical supplies and other goods sold to them and used

---

[4] Section 7-2-315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

CODE OF ALABAMA 1975 § 7-2-315.

4

> in their care; often, those supplies are of an inherently dangerous nature. The complete dependence of patients on the staff of a hospital to choose fit products for their care justifies the imposition of an implied warranty under § 7-2-315, whether the hospital is a "merchant" or not.

*Skelton*, 459 So. 2d at 823.

In *Allred*, the plaintiff alleged that he had been treated for an ongoing medical problem that ultimately required the surgical removal and replacement of a implanted prosthesis. The plaintiff further alleged that the prosthesis malfunctioned, requiring a number of corrective surgeries and a second replacement surgery. According to the plaintiff, the defendant doctor promised him that he would not be responsible "for some of the costs associated with the corrective measures, but that, in fact, he was charged for those costs." *Allred*, 598 So. 2d at 1348. His claims included "'outrageous . . . conduct,' 'conversion,' [and] 'breach of contract.'" *Id*. The trial court granted summary judgment for the defendant who was sued as an individual and as a professional corporation. On appeal, the plaintiff asserted that the trial court erred in concluding that he stated a cause of action for medical malpractice rather then for breach of warranty and thus, he says, the court applied the wrong law to the facts. . . ." *Id*. In affirming the trial court, the Alabama Supreme Court stated:

> Allred averred in his complaint that the first prosthesis implanted by Dr. Shirley did not "pass the test of merchantability," but he went on to state that he entered an agreement with Dr. Shirley for Dr. Shirley to replace the prosthesis, "thereby establishing the contract made a basis for this action." All of Allred's allegations of wrongdoing and all of his requests for monetary damages stated in his complaint relate to matters that occurred, not from a breach of warranty, but from matters arising after he had waived any warranty claim. In his affidavit Allred stated that the first replacement prosthesis "failed within warranty" but that he "gave up [his] warranty claim, as consideration for the goods and services [he] was offered" (consisting, he indicates elsewhere, of Dr. Shirley's promise of another replacement prosthesis without charge because Dr. Shirley's treatment had not been adequate to correct his medical problem). He alleges, in substance,

5

> that Dr. Shirley, having conceded the inadequacy of the treatment, did not live up to this bargain.
>
> Clearly, Allred did not make a breach of warranty claim, as had the plaintiffs in *Skelton*. Moreover, given all of the foregoing, it is evident that Allred made, in substance, a medical malpractice claim.

*Allred*, 598 So. 2d at 1349-50.

In *Sonnier*, the plaintiffs alleged that the defendants performed an unnecessary hysterectomy and had later misrepresented that the plaintiff had cancer. The trial court granted summary judgment in favor of the defendants. The Alabama Court of Civil Appeals reversed the judgment. The Alabama Supreme Court granted the defendants' petition for a writ of certiorari. The issue on review concerned the applicable statute of limitations. The court stated, in pertinent part, that "[c]laims alleging misrepresentations made during the course of a doctor-patient relationship are claims of malpractice and are governed by the AMLA." *Sonnier*, 707 So. 2d at 638.

In *Collins*, the plaintiff brought a medical malpractice, assault and battery, and trespass claims against her doctor and the clinic in which she was treated, seeking damages for removal of the wrong ovary during surgery. *Collins*, 821 So. 2d 173. The trial court granted the defendants' motion to strike the plaintiff's assault and battery and trespass claims. On appeal, the Alabama Supreme Court stated, "The issue presented by this appeal is whether the trial court correctly determined that the AMLA provides a cause of action for medical malpractice only, precluding all other causes of action, including Collins's claims alleging assault and battery and trespass." *Id.* at 175. In reversing and remanding the case, the court stated:

> At the outset, we note that the AMLA recognizes the possibility that more than one type of action may be brought under that act. Specifically, the

definitions section, § 6-5-542, which the trial court interpreted to allow only one cause of action, *i.e.*, medical malpractice, states, in pertinent part, that "[t]his definition [for 'standard of care'] applies to *all actions* for injuries or damages or wrongful death *whether in contract or tort and whether based on intentional or unintentional conduct*." (Emphasis added.) Thus, the AMLA envisions both tort claims and contract claims, based on either intentional or unintentional conduct. This particular section provides the applicable standard of care that governs all actions against the health-care providers specified in the act; it does not contain language that would lead to the conclusion that the only available cause of action, in contract or in tort, is medical malpractice. We note further that other sections of the AMLA also recognize that more than one type of action for medical malpractice may be brought.[ ] Moreover, we note that this Court has accepted other causes of action, distinct from medical malpractice, as being governed by the AMLA. In *Mock v. Allen*, 783 So. 2d 828, 832 (Ala. 2000), this Court stated:

> "Over the years, this Court has been called upon to determine whether a number of cases filed against physicians and other health-care providers were, in fact, governed by the AMLA. We have held generally that '[c]laims alleging misrepresentations made during the course of a doctor-patient relationship are claims of malpractice and are governed by the AMLA.' *Ex parte Sonnier*, 707 So. 2d 635, 638 (Ala. 1997) (*citing Benefield v. F. Hood Craddock Clinic*, 456 So. 2d [52] at 54 [(Ala. 1984)]). This Court has also held that informed-consent claims brought against physicians and surgeons are governed by the AMLA. *See Otwell v. Bryant*, 497 So. 2d 111 (Ala. 1986); *Fain v. Smith*, 479 So. 2d 1150 (Ala. 1985). Furthermore, this Court has held that claims brought against health-care providers purporting to be claims under the Alabama Extended Manufacturer's Liability Doctrine ('AEMLD') are governed by the AMLA, when the act forming the basis of the patient's claims occurred during the course of the treatment and constituted the treatment sought from the health-care provider. *Mobile Infirmary v. Delchamps*, 642 So. 2d 954, 956-57 (Ala. 1994) (two-year statute of limitations contained in the AMLA applied to a patient's action against a health-care provider for damages under the AEMLD arising out of the surgical placement of a temporomandibular implant in her jaw)."

Therefore, based upon the clear language of the AMLA, we hold that the trial court erred in determining that the AMLA allows for only one cause of action, and, consequently, in striking Collins's counts for assault and battery and trespass. The trial court's judgment is therefore reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Collins*, 821 So. 2d 176-77.

An initial review of the foregoing authorities indicates that *Collins* appears to control the result on the present motion. The defendants argue, however, that *Collins* is not controlling because that case falls within an exception to the AMLA's usual requirement that the plaintiff proffer a similarly situated expert witness in order to bring an action against a healthcare provider. Although the defendant cites no authority for the proposition that the authority of *Collins* is so limited, the court has found adequate support for the assertion that expert testimony is not always required. The Alabama Supreme Court has held that in limited circumstances, a healthcare provider may be held liable for patient injuries absent expert testimony as to the standard of care. *Bell v. Hart*, 516 So. 2d 562, 566 (Ala. 1987); *see also Heath v. HealthSouth Medical Center*, ___ So. 2d ___, 2002 WL 844779, * 3-4 (Ala. Civ. App., May 2, 2002). Those circumstances include "where the want of skill or lack of care is so apparent as to be within the comprehension of the average layman and thus requires only common knowledge and experience to understand" and "where the plaintiff introduces a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice."[5] *Bell*, 516 So. 2d at 566. "Where this exception [(concerning readily apparent conduct)] is inapplicable, the expert witness must establish '1) the appropriate standard of care, 2) the doctor's deviation from that standard, and

---

[5] In *Heath*, the Alabama Court of Civil Appeals recently stated:

Our supreme court has recognized the following situations as falling within this narrow exception: (1) where a foreign instrumentality is located in the plaintiff's body after surgery; (2) where the injury sustained is completely unrelated to the condition for which the plaintiff sought medical treatment; (3) where the plaintiff relies upon a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and (4) where the plaintiff is himself or herself a medical expert qualified pursuant to the Alabama Medical Liability Act ("AMLA") to evaluate the doctor's allegedly negligent conduct.

*Heath*, 2002 WL 844779 at *4.

3) a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff.' *Bradford v. McGee*, 534 So. 2d 1076, 1079 (Ala. 1988) (citations omitted)." *Pruitt v. Zeiger*, 590 So. 2d 236, 238 (Ala. 1991).

Although the defendants are correct in asserting that expert testimony is not always required, the *Collins* court did not mention this in its analysis. As noted above, it simply concluded that "the trial court erred in determining that the AMLA allows for only one cause of action." *Collins*, 821 So. 2d at 177.

Premised on the foregoing authorities, the court finds that the implied warranty claim against Weisenfeld and SMG most likely is within the ambit of the medical malpractice claim asserted in the amended complaint. The Alabama Supreme Court made it clear in *Collins* that the AMLA allows for more than one cause of action; however, that does not change the fact that a claim such as the implied warranty claim herein most likely will be governed by the AMLA because it is so intertwined with the treatment of Ameca.[6] For instance, whether the plaintiffs have asserted viable claims under the circumstances will depend on whether these defendants (Weisenfeld and SMG) met the standard of care articulated by the AMLA. *See* ALA. CODE § 6-5-484(a) (Degree of care owed to patient) and § 6-5-548(a) (Burden of proof; reasonable care provider . . . ). Thus, the warranty claim ultimately may be subsumed within the malpractice claim asserted in the first count of the amended complaint. However, because of the high standard imposed upon the parties on a motion to dismiss, the court finds that the motion is due to be denied as to the warranty claim at this juncture. Although it appears to the undersigned that the plaintiff will be unable to support a warranty claim against Weisenfeld and SMG, that matter

---

[6] The court does not find *Horn, Skelton, Allred,* or *Sonnier* dispositive at this juncture.

is more appropriately addressed after discovery has been completed.

To the extent that the complaint could be read to assert a claim for fraud against Weisenfeld and SMG, the court finds that the motion is due to be granted as these defendants are not specifically named in that count.

## CONCLUSION

Premised on the foregoing, the defendants' motion to dismiss Counts III and IV of the plaintiffs' amended complaint is due to be granted in part and denied in part. An appropriate order will be entered.

The Clerk of the Court is directed to serve a copy of this memorandum opinion upon counsel of record in this matter.

**DONE** this the _4th_ day of December, 2002.

JOHN E. OTT
United States Magistrate Judge